# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

VICKI ROSS,

                Plaintiff,

v.                               CIVIL ACTION NO. 3:18-0036

HURON LAW GROUP WEST VIRGINIA, PLLC,
HURON LAW GROUP, PLLC,
GRT FINANCIAL, INC.,
ZERO DEBT, LLC,
DOE CORPORATION I, and
DOE CORPORATION II,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion to Dismiss the Amended Complaint filed by Defendants Huron Law Group West Virginia, PLLC; Huron Law Group, PLLC; GRT Financial, Inc.; and Zero Debt, LLC (collectively "Named Defendants"). ECF No. 19. For the foregoing reasons, the Court **GRANTS IN PART** the Named Defendants' motion, **DISMISSES** Count One as it pertains to Named Defendants, and **DENIES IN PART** for the remainder.

## I. BACKGROUND

Plaintiff filed the Class Action Complaint with the Court on January 10, 2018. *Compl.*, ECF No. 1. Named Defendants responded on April 6, 2018 with a Motion to Dismiss. ECF No. 11. Thereafter, Plaintiff filed a First Amended Class Action Complaint on April 19, 2018. *Am. Compl.*, ECF No. 17. In the Amended Complaint, Plaintiff alleges Named Defendants procured a consumer report on her and improperly used information in the report to determine her eligibility for debt consolidation services, and solicit her for the same. *Am. Compl.*, ¶¶ 24–55.

The alleged collaborative process which led to the mailers is as follows: First, Plaintiff claims Doe Corporation I ("Doe I") allegedly prepared information which constitute a "consumer report" under the Fair Credit Reporting Act ("FCRA"). *Id.* ¶ 35. Doe I then sold these consumer reports to Doe Corporation II ("Doe II"), and Doe II used this information to compile lists to resell to other businesses, including Named Defendants. *Id.* ¶¶ 22–23. Companies, including Named Defendants, then used this information to assess the potential eligibility for debt consolidation services by identifying consumers who maintain high credit balances and targeted them in a "joint venture to advertise and sell debt consolidation services." *Id.* ¶¶ 24, 29–32, 40–41.

The Amended Complaint raises three claims under the FCRA, including that (Count 1) Doe I and Doe II furnished Plaintiff's consumer report to Named Defendants for an impermissible purpose and that (Count 2) Doe II and (Count 3) Named Defendants accessed and used Plaintiff's consumer report without properly certifying a permissible purpose, under false pretenses, and without a permissible purpose. *Id.* ¶¶ 77–90. Plaintiff further purports to represent a class of similarly situated persons, under Rule 23 of the Federal Rules of Civil Procedure. *Id.* ¶ 71.

## II. LEGAL STANDARD

The motion to dismiss putative nonresident class members for lack of personal jurisdiction is evaluated under Fed. R. Civ. P. 12(b)(2). "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a *prima facie* showing in support of its assertion of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558, 560 (4th Cir. 2014). In conducting its analysis, "the district court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* at 558.

"A federal district court may only exercise personal jurisdiction over a [nonresident defendant] if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment . . . ." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "Because the West Virginia long-arm statute is coextensive with the full reach of due process, . . . the statutory inquiry necessarily merges with the Constitutional inquiry." *In re Celotex Corp.*, 124 F.3d 619, 627-28 (4th Cir. 1997) (citations omitted).

To comport with this due process requirement, a district court may exercise specific personal jurisdiction over a defendant only if he has "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Consulting Engineers Corp.*, 561 F.3d at 277 (internal quotation marks omitted). This inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1121 (internal quotation marks omitted). Thus, a court must focus upon "contacts that the defendant himself creates" and only such contacts "with the forum State itself, not [merely] the defendant's contacts with persons who reside there." *Id.* at 1122 (internal quotation marks omitted). A court must do "more than formulaically count contacts, instead taking into account the qualitative nature of each of the defendant's connections to the forum state." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012). Thus, "a single act by a defendant can be sufficient to satisfy the necessary quality and nature of such minimal contacts, although casual or isolated contacts are insufficient to trigger an obligation to litigate in the forum." *Id.* (internal quotation marks omitted).

The motion to dismiss for failure to state a claim is evaluated under the Fed. R. Civ. P. 12(b)(6) standard. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court stated courts must look for "plausibility" in the complaint. 550 U.S. at 555. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

### III. DISCUSSION

In the Motion to Dismiss the Amended Complaint, Named Defendants state dismissal is merited on three grounds. Named Defendants argue (1) a lack of personal jurisdiction, (2) a failure to sufficiently allege any claim under the FCRA, and (3) a failure to allege any action by Named Defendants to sufficiently state a claim against them in Count One of the Amended Complaint. *Memo. Supp. Mot. Dismiss*, pp. 1–2, ECF No. 20. The Court addresses each argument in turn.

*A. Personal Jurisdiction*

Named Defendants' argument for a lack of personal jurisdiction is limited to the purported nationwide class claims of unnamed plaintiffs outside West Virginia. *Id.* This argument depends entirely on the application of the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Ct.,* 137 S. Ct. 1773 (2017), to federal class action claims. *Id.* While the Fourth Circuit has not addressed this issue, many courts have rejected this argument. *See Hicks v. Houston Baptist Univ.*, No. 5:17-CV-629-FL, 2019 WL 96219 (E.D.N.C. Jan. 3, 2019); *Morgan v. U.S. Xpress, Inc.*, No. 3:17-CV-00085, 2018 WL 3580775 (W.D. Va. July 25, 2017).[1]

In *Morgan v. U.S. Xpress, Inc.*, the defendant accepted personal jurisdiction for in-state claims in a class action suit, but contested that finding nationwide specific personal jurisdiction for non-resident members of the purported class violated the due process clause of the Fourteenth Amendment, as interpreted under the Supreme Court's ruling in *Bristol-Myers*. 2018 WL 3580775, at *3. The court held, "alongside[] 'most of the courts that have encountered this issue,' . . . that *Bristol-Myers Squibb*'s holding and logic do not extend to the federal class action context." *Id.* at *5 (quoting *Chernus v. Logitech, Inc.*, No. CV 17-673(FLW), 2018 WL 1981481, at *7 (D.N.J.

---

[1] For a brief summary of the Supreme Court's decision in *Bristol-Myers*, the Court adopts the one found in *Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775, at *4–*5.

Apr. 27, 2018) (collecting cases)). The court reasoned that unlike class actions, each plaintiff in a mass tort action is a real party in interest to the complaint. *Id.* The court elaborated that in class actions "there is only one suit: the suit between Plaintiff and Defendant" and the *Bristol-Myers* decision *"*framed the specific jurisdiction analysis at the level of the suit." *Id.* "[U]nlike the mass action in *Bristol-Myers Squibb*, the only suit before the Court does arise out of or relate to Defendant's contacts with the forum." *Id.*

The court further noted that the Rule 23 requirements for a putative class action lawsuit (numerosity, commonality, typicality, adequacy of representation, predominance, and superiority) "supply due process safeguards not applicable in [*Bristol-Myers Squibb*'s] mass tort context." *Id.* (quoting *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114 (D.D.C. 2018) (internal quotes omitted). "Often, mass torts cannot qualify for class action treatment because they are unable to satisfy these standards." *Id.* (quoting *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 09-2047, 2017 WL 5971622, at *14 (E.D. La. Nov. 30, 2017) (internal quotes omitted).[2]

Similarly, Named Defendants attempt to apply the exact same argument. The Court finds the rationale of the court in *Morgan* persuasive, and rejects the application of *Bristol-Myers* to federal class action claims for substantively similar reasons. Because Named Defendants do not dispute specific personal jurisdiction over Ms. Ross' claims, the Court finds there is no lack of personal jurisdiction of purported non-resident class members, and "the defendant may not attempt to parse the Court's exercise of personal jurisdiction at this finer level of granularity." *Id.* at *6. The Court denies Named Defendants' Motion to Dismiss for lack of personal jurisdiction.

---

[2] The court in *Morgan* also noted Congress' intent to create a meaningful remedy for multiple small claims and was "reluctant to believe that the Supreme Court's 'straightforward application . . . of settled principles of personal jurisdiction' in *Bristol-Myers Squibb* requires a substantial limiting of that valuable tool." *Id*. (quoting *Bristol-Myers*, 137 S. Ct. 1773. (2017)).

*B. Failure to State a Claim – "Consumer Reports" Under the FCRA*

Named Defendants' second argument claims that Plaintiff failed to sufficiently allege any facts to show that Named Defendants obtained a "consumer report" as defined under the FCRA. *Memo. Supp. Summ. J.*, at 2.

Under the FCRA, there is a definition for what constitutes a "consumer report". 15 U.S.C. § 1681a(d). That definition includes a communication "of any information by a consumer reporting agency bearing on a consumer's. . . credit standing . . . which is used or expected to be used . . . in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for – (a) credit or insurance to be used primarily for personal, family, or household purposes." *Id.* Some courts have been careful to distinguish between reports used for consumer purposes and those used for business purposes. *See McCready v. eBay, Inc.*, 453 F.3d 882, 889 (7th Cir. 2006) (stating that the FCRA "does not apply to reports utilized for business, commercial or professional purposes.") (internal citations omitted).

Here, Named Defendants claim Plaintiff alleged mere legal conclusions by simply stating the Named Defendants obtained "consumer reports" without offering any supporting facts to show the purpose of the documents furnished fit the definition of a "consumer report" under the FCRA. *Memo Supp. Mot. Dismiss*, at 17 (citing *Am. Compl.*, ¶35). However, a complete reading of the Amended Complaint shows the alleged purpose of the reports was to target potential clients for debt consolidation services. *Am. Compl.*, at 1. While there must be more than mere legal conclusions to survive a motion to dismiss, Named Defendants improperly apply this to Plaintiff's allegations. The legal conclusion here is a cause of action under the FCRA, with a statutorily defined consumer report being a necessary element. Plaintiff supported this element by stating that reports of credit standing to determine eligibility for debt consolidation services was furnished by

an unnamed credit reporting agency to Named Defendants. Consolidation loans can be defined as a type of "credit". *See Loan*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("'Loan' includes: . . . (2) the creation of debt by a *credit* to an account with the lender upon which the debtor is entitled to draw immediately.") (emphasis added); *see also Franke v. Fin. Lead Serv.*, No. 1:12-CV-1374, 2014 WL 7010790 (W.D. Mi. Dec. 10, 2014) (holding that whether a list used to produce a mailer to promote debt consolidation services constituted a consumer report under the FCRA constituted a common question appropriate for class certification).

Rule 8 does not demand "detailed factual allegations[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). The Court reads Plaintiff's claims under the FCRA as sufficiently pleading the report in question was a consumer report under the FCRA. As such, the Court denies Named Defendants' Motion to Dismiss on the grounds that Plaintiff failed to state a claim under the FCRA for that basis.

*C. Failure to State a Claim – Count One as Alleged Against Named Defendants*

Named Defendants' claim, in their final argument, Plaintiff failed to allege any supporting facts that tend to show Named Defendants *furnished* consumer reports in violation of the FCRA. *Memo. Supp. Mot. Dismiss*, at 2. In Count One of the Complaint, Plaintiff does claim that Named Defendants ever furnished a consumer report. In response to this observation, Plaintiff directs attention to an earlier portion of the Amended Complaint, specifically paragraphs 34 and 36–39. *Reply Mot. Dismiss*, p. 6, ECF No. 23.

However, even though Plaintiff alleges Named Defendants furnished these reports for preparation and mailing of marketing letters, Plaintiff fails to state any fact alleging Named Defendants' purpose was to establish the consumer's eligibility for an impermissible purpose. In

fact, Plaintiff alleges Named Defendants "directed" the third party to prepare and send these mailers at their behest. *Am. Compl.*, ¶¶ 36, 38.

Though a report may have been furnished to Named Defendants for an allegedly impermissible purpose, the purpose for which Named Defendants furnished that same report to a non-party marketing firm is an entirely different one. Where the Court could reasonably read the Amended Complaint to allege that Named Defendants acquired the alleged consumer reports for the purpose of determining eligibility for the debt consolidation services they provide, the Court cannot read that same allegation into the Amended Complaint. Here, Plaintiff alleged the non-party marketing firm was acting as an agent of the Named Plaintiffs and making no independent assessment of its own.[3] As such, the Court grants this part of Named Defendants' motion, and dismisses Count One as it pertains to them.

## IV. CONCLUSION

For the reasons detailed above, the Court **GRANTS IN PART** the Motion to Dismiss the Amended Complaint (ECF No. 19), **DISMISSES** Count One as it pertains to Huron Law Group West Virginia, PLLC; Huron Law Group, PLLC; GRT Financial, Inc.; and Zero Debt, LLC, and **DENIES IN PART** for the remainder.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 14, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[3] This does not preclude potential liability for Named Defendants potential "access and use" of an unauthorized report, but finds Named Defendants are not alleged to have "furnished" such report in violation of the FCRA.